# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LOURDES ORTIZ-MEJIAS, **Plaintiff**, v. MUNICIPALITY OF SAN JUAN, **Defendant**. | CIVIL NO. 16-2713 (JAG) |

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

This matter is before the Court on Defendant Municipality of San Juan's ("Defendant" or "the Municipality") Motion to Compel Arbitration ("Motion to Compel"), Docket No. 9, and Motion for Judgment on the Pleadings, Docket No. 10. Plaintiff Lourdes Ortiz-Mejias ("Plaintiff" or "Ortiz") timely opposed both motions, Docket Nos. 12, 15. Defendant replied to both Oppositions. Docket Nos. 17, 19. For the reasons stated below, Defendant's Motion for Judgment on the Pleadings is GRANTED IN PART AND DENIED IN PART, and Defendant's Motion to Compel Arbitration is DENIED.

## BACKGROUND

### I. Factual History

From October 2014 until August 2016, Ortiz was employed by the Municipality as a "Trolley" driver. Docket No. 5. Ortiz, the only female Trolley driver, was allegedly discriminated against by her supervisor because of her gender. *Id.* Some of the allegedly discriminatory acts include (a) being screamed at by her supervisor in front of colleagues, (b) not being allowed to swap shifts even though her male colleagues were allowed to do so, (c) not being allowed to work overtime

even though her male colleagues were allowed to do so, and (d) having her requests for trolley maintenance ignored. *Id.*

When Ortiz complained about her discriminatory treatment, her supervisor retaliated and the discrimination became worse. *Id.* In May 2015, Ortiz filed a charge of employment discrimination on the basis of sex with the Equal Employment Opportunity Commission ("EEOC").[1] *Id.* Shortly thereafter, she received a letter from her supervisor directing her to withdraw her complaints. *Id.* Ortiz further alleges that discriminatory actions against her intensified after making her complaints. *Id.* This included Ortiz being relieved of her duties, not being allowed to use the bathroom, and her supervisor refusing talk to her. *Id.*

As a result of the discriminatory and retaliatory actions against her, Ortiz had to receive psychiatric treatment and had "no alternative" except to resign. *Id.* Ortiz alleges her August 2016 resignation was a constructive discharge. *Id.*

## II. Procedural History

Ortiz sued the Municipality on September 24, 2016. Docket No. 1. Her amended complaint alleged sex-based discrimination and retaliation prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* Docket No. 4. Ortiz also alleged violations of the Civil Rights Act of 1991, 42 U.S.C. §2000e, *et seq.*; Puerto Rico Law 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 151a; Puerto Rico Law 69 of July 6, 1985, P.R. Laws Ann. tit. 29, § 1323; and Puerto Rico Law 115 of

---

[1] This was the first of three EEOC complaints filed by Ortiz. The other two were filed on June 2 and July 22, 2015, respectively. She claimed discrimination and retaliation in all three. Docket Nos. 9-3, 9-4, 9-5.

December 20, 1991, P.R. Laws Ann. tit. 29, § 194a (1991). *Id*. Additionally, she asserted violations of the Fourteenth, First, and Fifth Amendments of the United States Constitution. *Id*.

In its Motion to Compel, Defendant countered that Plaintiff's claims should be subject to arbitration pursuant to the Collective Bargaining Agreement (CBA) entered into by her union and the Municipality. Docket No. 9. In its Motion for Judgment on the Pleadings, Defendant also argued that Plaintiff's claims should be dismissed for failure to exhaust administrative proceedings as required by 42 U.S.C. § 2000e-5(e). Docket No. 10.

## STANDARD OF REVIEW

Motions for Judgment on the Pleadings, under Federal Rules of Civil Procedure 12(c), are treated similarly to 12(b)(6) motions to dismiss, except that 12(c) motions involve the pleadings as a whole. *See Aponte-Torres v. University of Puerto Rico*, 445 F.3d 50, 54-55 (1st Cir. 2007). To survive dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007). According to *Twombly*, the complaint must state enough facts to "nudge [the plaintiff's] claims across the line from conceivable to plausible." *Id*. at 1974. Therefore, to preclude dismissal pursuant to Fed. R. Civ. P. 12(b)(6), the complaint must rest on factual allegations sufficient "to raise a right to relief above the speculative level." *Id*. at 1965. At the motion to dismiss stage, courts accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. *See Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 51 (1st Cir. 1988).

## ANALYSIS

There are two motions before the Court: a Motion for Judgment on the Pleadings, which the Court addresses in Part I, and a Motion to Compel Arbitration, which the Court addresses in Part

II.[2] As to Defendant's Motion for Judgment on the Pleadings, the Court grants the motion only as to any claims Plaintiff asserts under the First Amendment, the Fifth Amendment, and Substantive Due Process. The Court denies the motion as to Plaintiff's remaining claims, including her Title VII claims. The Court then denies Defendant's Motion to Compel Arbitration because Plaintiff's statutory Title VII claims are outside the scope of the relevant arbitration clause.

## I.   Motion for Judgment on the Pleadings

Defendant contends that all of Plaintiff's claims should be dismissed. Docket No. 10. Specifically, Defendant contends that Plaintiff's Title VII claims should be dismissed because Plaintiff failed to exhaust her administrative remedies by not filing an EEOC charge for her constructive discharge claim. Docket No. 10 at 11. Defendant next contends that Plaintiff's Constitutional claims should be dismissed because the Plaintiff has not alleged sufficient facts to show that these claims are plausible. *Id.* at 12-14. Lastly, Defendant argues that Plaintiff's state law claims should be dismissed because the Court has no supplemental jurisdiction. *Id.* at 14.

The Court begins by addressing Defendant's argument as to Plaintiff's main claims—the Title VII retaliation claims. The Court concludes that Plaintiff exhausted her administrative remedies as to these claims because the constructive discharge claim—Plaintiff's only claim that was not covered in a EEOC charge—constitutes retaliation for an earlier EEOC charge, and thus it did not need its own EEOC charge. Additionally, the Court finds that the amended complaint contains enough facts to allege that Plaintiff's constructive discharge was retaliation for submitting her EEOC charges. The Court then continues to evaluate each of Plaintiff's constitutional claims.

---

[2] Defendant argued in its Motion for Judgment on the Pleadings that Plaintiff's claims are subject to arbitration and should therefore be dismissed. Docket No. 10. This argument is addressed jointly with Defendant's arguments from its Motion to Compel Arbitration in Part II of the Analysis.

Finally, the Court does not dismiss Plaintiff's state law claims since the Court still has supplemental jurisdiction over these claims.

### A. Title VII Claims

Defendant argues that Plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies. The Court disagrees.

A person wishing to bring a Title VII suit for discrimination must first exhaust all administrative remedies by filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e-5(e)-(f). Only after the EEOC has issued a so-called right to sue letter may the aggrieved person file suit in federal court. *Id.* Normally, the claims made in a judicial complaint must be within the "scope of the investigation" of the corresponding EEOC charge. *Thorton v. United Parcel Service, Inc.*, 587 F.3d 27, 32 (1st Cir. 2009). This means that the allegations in the judicial complaint must involve acts that the EEOC investigation "could reasonably [have been] expect[ed] to uncover." *Id.* at 31-23 (internal quotation marks omitted).

Defendant argues that this rule required Plaintiff to file an EEOC charge for her alleged constructive discharge before filing a judicial complaint. Docket No. 10. Plaintiff counters by citing *Clockedile v. New Hampshire Dept. of Corrections*, 245 F.3d 1, 6 (1st Cir. 2001), to argue that she was not required to file a separate EEOC charge for the constructive discharge claim because the constructive discharge was retaliation for filing her initial EEOC complaint. Docket No. 15 at 8.

In *Clockedile*, the First Circuit found that a plaintiff who claimed retaliation for filing a sexual harassment charge with the EEOC did not have to file a separate EEOC charge for the retaliation before brining suit. 245 F.3d at 6. Specifically, the court held that Title VII retaliation claims are

exempt from EEOC filing requirements if "the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—e.g., the retaliation is for filing the agency complaint itself." *Id*. at 6. In other words, if an employer retaliates against an employee for filing an EEOC charge alleging discrimination, then the employee does not have to file a separate EEOC charge for the retaliation to exhaust all administrative remedies and initiate a Title VII suit.

Plaintiff argues that the *Clockedile* exception applies here because she alleged that her constructive discharge resulted from retaliation for filing her EEOC charge. Docket No. 15 at 9. The Court agrees because the retaliation issue in the instant case is nearly identical to the one in *Clockedile*. In both cases, the plaintiff filed an EEOC charge, the employer retaliated against plaintiff for filing the EEOC charge, and the plaintiff brought suit alleging discrimination/sexual harassment and retaliation under Title VII. *Id.*; Docket No. 5. But Defendant counters that the *Clockedile* exception is no longer good law, Docket No. 19 at 2, which, if true, would likely bar Plaintiff's constructive discharge claim. As explained below, the *Clockedile* exception remains good law.

1. The *Clockedile* Exception Remains Good Law

Defendant first argues that *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002), overruled *Clockedile*. Docket No. 19 at 2. The Court disagrees because *Morgan* dealt with a different issue than *Clockedile*.

*Morgan* centered on the statute of limitations period for filing an EEOC charge and whether the plaintiff's allegations qualified for the "continuing violation" exception to the statutory period. 536 U.S. at 104. The plaintiff in *Morgan* filed an EEOC charge claiming discrimination and retaliation by his employer (Amtrak), but many of the alleged discriminatory acts occurred more

than 300 days before the charge was filed (300 days being the applicable statutory period for filing an EEOC charge). *Id.* at 105-06. The plaintiff argued that the continuing violation doctrine—which allows consideration of conduct that would normally be time barred if the untimely acts are part of an "ongoing unlawful employment practice"—applied to his discrimination allegations. *Id.* at 107-08. But the Court held that the continuing violation doctrine does not apply to "discrete acts such as termination," which must be filed within the statutory period. *Id* at 114.

*Clockedile is* distinguishable from *Morgan*. *Morgan* centered on the tolling of the statutory limitations period for filing an EEOC charge, i.e. on discriminatory incidents that occurred *before* the filing of an EEOC charge. 536 U.S. at 104. Its holding clarified what types of discriminatory acts qualified for the continuing violation doctrine. *Id.* at 114. *Clockedile*, on the other hand, focused on whether retaliation that occurred *after* an EEOC charge had been filed required the filing of an additional charge. 245 F.3d at 6. It did not implicate the tolling of the statutory period nor the continuing violation doctrine. *Id.* Thus, *Clockedile* is unaffected by *Morgan*.

Moreover, the First Circuit has reaffirmed the *Clockedile* exception in post-*Morgan* decisions, including one cited by the Defendant. *See e.g. Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir. 2005) (citing *Clockedile* for the proposition that "retaliation claims are preserved if the retaliation is 'reasonably related to and grows out of' the discrimination charged in the administrative complaint.")[3]; *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 22 (1st Cir. 2014) (same).

---

[3] Defendant implies that *Jorge* constrains *Clockedile* by holding that a "Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge." Docket No. 10 (quoting *Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir. 2005)). But the *Jorge* decision is inapposite because the plaintiff in that case tried to "piggyback" a Title VII claim with an ADEA charge filed with the EEOC. 404 F.3d at 565. Thus, unlike *Clockedile*, which dealt with the specific scenario of a plaintiff asserting unlawful retaliation under Title VII for her EEOC charge based on Title VII discrimination, the plaintiff in *Jorge* did not assert.

Additionally, Defendant also argues that *Ayala v. Shinseki* overruled *Clockedile* and controls this case. 780 F.3d 52, 59 (1st Cir. 2015) (holding that the "continuing violation doctrine" did not apply to "discrete acts" alleged in an untimely EEOC charge). But *Ayala*, like *Morgan*, only addressed whether the continuing violation doctrine applied to the plaintiff's claims, and thus whether the plaintiff's claims were timely filed. *Id.* Thus, Ayala's holding similarly had no impact on *Clockedile*'s rule for retaliation claims.

Accordingly, *Clockedile* remains good law. It is distinguishable from cases the Defendant argues overruled it and it has been reaffirmed by First Circuit precedent. Therefore, Defendant's contention that *Morgan* and *Ayala* control the instant case is incorrect. The Court now evaluates whether Plaintiff's amended complaint sufficiently pleaded that her constructive discharge was retaliation for filing her EEOC charges—i.e. whether Clockedile applies.

### 2. Plaintiff Pleaded Sufficient Facts for Retaliation

At this stage, Plaintiff sufficiently alleges that her constructive discharge was in retaliation for submitting her EEOC charges. The instant case is analogous to the First Circuit's decision in *Garayalde-Rijos*. 747 F.3d at 25. In that case, the plaintiff filed an EEOC charge claiming that she was discriminated against on the basis of her sex by the defendant (a municipality) during its hiring process. *Id*. When the plaintiff brought suit, she claimed that after being hired she was retaliated against for filing the EEOC charge. *Id.* at 20. The court summarized Plaintiff's facts alleging retaliation as: (1) the Defendant municipality only hired Plaintiff after the EEOC found

---

any retaliation claim. Instead, the plaintiff in *Jorge* tried to add a completely different statutory scheme that she had not included in her EEOC charge. Thus, these two cases dealt with fundamentally different factual scenarios. Accordingly, the holding in *Jorge* had no effect on *Clockedile*'s specific rule for retaliation claims.

her sex discrimination complaint was likely meritorious, and (2) when Plaintiff began work she was treated unequally compared to her male colleagues. *Id.* at 25. The First Circuit found that, under these facts, it was sufficiently plausible that the plaintiff's post-hire mistreatment was retaliation for her EEOC complaint alleging pre-hire sex discrimination. *Id.*

Similarly, the facts pleaded by the Plaintiff in the instant case make it plausible that her constructive discharge was due to retaliation for her submitting her EEOC charges. Just how the plaintiff in *Garayalde-Rijos* alleged that her employer retaliated against her after she filed an EEOC charge, here, Plaintiff alleged that she was retaliated against after filing her EEOC charge. Docket No. 5 at 5-6. Specifically, the amended complaint alleges that Plaintiff's supervisor warned her to withdraw her EEOC charge, that discrimination against her intensified, and that she had to seek psychiatric treatment due to "retaliation," which resulted in a constructive discharge. *Id.*

The temporal distance between Plaintiff's EEOC charges and her alleged constructive discharge does not undo the retaliation. Defendant argues that the thirteen-month gap between the filing of Plaintiff's last EEOC charge and her constructive discharge makes "a mockery" of the administrative exhaustion requirement. Docket No. 10. But the retaliation against Plaintiff did not begin with the constructive discharge, it began much earlier. Plaintiff received a "harassing and intimidating" letter from her supervisor asking her to "cease . . . said controversy" only days after her initial EEOC charge. Docket No. 5 at 6. A natural reading of the amended complaint suggests that the "intensified" discrimination began soon after her first EEOC charge and that it continued until the day of her constructive discharge. *Id.*

Even though Plaintiff's constructive discharge occurred thirteen months after her last EEOC charge, the retaliation that caused it started almost immediately after she filed her first charge. Thus, temporal proximity is not an issue. But even if it were, the temporal proximity of an EEOC

charge filing and alleged retaliation is "merely one factor" relevant to the causation element of retaliation and "usually during later proceedings, such as summary judgment." *Garayalde-Rijos.* 747 F.3d at 25. Thus, a lack of temporal proximity alone is insufficient to undermine the plausibility of a retaliation claim.

Plaintiff sufficiently alleged that her constructive discharge was in retaliation for submitting her EEOC charges. Accordingly, Plaintiff did not have to file a separate EEOC charge for her constructive discharge. *See Clockedile*, 245 F.3d at 6; *see supra* Section I.A.1. Thus, she exhausted her administrative remedies as to this claim.

### B. Constitutional Claims

Defendant also argues that Plaintiff's Equal Protection Clause claims under the First, Fifth "and/or" Fourteenth amendments of the U.S. Constitution, and Plaintiff's Substantive Due Process claim should be dismissed. Docket No. 10 at 12-13. The Court dismisses all of Plaintiff's constitutional claims except her Fourteenth Amendment Equal Protection claim.

#### 1. Fifth Amendment

The Fifth Amendment Due Process Clause (which implies an Equal Protection clause) applies "only to actions of the Federal Government—not to those of state or local governments." *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 687 (9th Cir.2001)). As Defendant correctly mentions, Plaintiff is not suing the Federal Government or any of its officers. Docket No. 10 at 13. Plaintiff, therefore, lacks any basis for a Fifth Amendment claim. Accordingly, Plaintiff's Fifth Amendment claim is dismissed with prejudice.

### 2. Fourteenth Amendment Equal Protection

Plaintiff sufficiently pleaded a Fourteenth Amendment Equal Protection claim. The Fourteenth Amendment requires that "persons similarly situated . . . be accorded similar governmental treatment." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 9 (1st Cir. 2007). A plaintiff must plead facts indicating that "compared with others similarly situated, [she] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Id.* (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 910 (1st Cir.1995)). At multiple points in her amended complaint, Plaintiff alleged that she was discriminated against because of her sex and refers to multiple instances in which she was treated differently than her male colleagues. Docket No. 5 at 3-6. Thus, Plaintiff was not accorded "similar governmental treatment" as "persons similarly situated" were. *Id.*

### 3. Substantive Due Process

Plaintiff also seemed to make a substantive due process claim, as Defendant points out. Docket No. 10; Docket No. 5. To challenge an executive action under the Fourteenth Amendment's Due Process clause, a plaintiff "must show both that the acts were so egregious as to shock the conscience and that they deprived him of a protected interest in life, liberty, or property." *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011) (internal quotation marks omitted). To meet this stringent standard, an executive act must be "truly outrageous, uncivilized, and intolerable." *Id.* (internal quotation marks omitted).

Plaintiff's amended complaint does not meet this high standard. Being deprived of one's duties, not being allowed to work overtime, and having a supervisor refuse to talk to you are not actions

so "egregious as to shock the conscience." The other facts alleged by Plaintiff similarly fail to meet the above standard. Accordingly, Plaintiff's Substantive Due Process claim is dismissed with prejudice.

### 4. First Amendment

The First Amendment protects an individual's freedom of religion, freedom of speech, freedom of the press, right to peaceably assemble, and right to petition the Government for a redress of grievances. U.S. Const. Amend. I. A public employee suing her government employer for violations of her First Amendment Free Speech rights "must show that he or she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 386 (2011). A complaint filed in "an internal grievance procedure" is usually not considered a matter of public concern. *Id.* Plaintiff's complaints did not involve a matter of public concern because she was reporting wrongdoing that, as the only female in the department, affected only her. She was not speaking as a citizen about sex-discrimination in the San Juan municipality in general, but instead filing complaints regarding workplace disputes that only affected herself. Thus, Plaintiff has failed to state a First Amendment claim. Accordingly, Plaintiff's First Amendment claim is dismissed with prejudice.

### C. State Law Claims

Defendant also argues that Plaintiff's state law claims should be dismissed for lack of supplemental subject matter jurisdiction. Docket No. 10 at 14. This argument was based on the belief that all of Plaintiff's federal claims would be dismissed. *Id.* Because some of Plaintiff's federal claims remain, the Court retains jurisdiction over the state law claims.

## II. Motion to Compel Arbitration

Defendant's Motion to Compel Arbitration turns on whether the arbitration clause of the collective-bargaining agreement ("CBA") entered into by Defendant and Plaintiff's union covers statutory claims like Plaintiff's Title VII claims.[4] The Court holds that the arbitration clause does not cover statutory claims.

The enforcement of arbitration agreements is generally governed by the Federal Arbitration Act ("FAA"), which provides a pro-arbitration framework. *See Soto–Alvarez v. AIMCO*, 561 F. Supp. 2d 228, 230 (D.P.R. 2008). But arbitration clauses in collective-bargaining agreements are covered by the Labor Management Relations Act and federal common law. *Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 4-5 (1st Cir. 2012). Federal courts have developed their own standard for determining when a collective bargaining agreement subjects statutory rights like Title VII to arbitration. *See e.g. Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 80 (1998).

A collective bargaining agreement must "clearly and unmistakabl[y]" include statutory rights within the scope of its arbitration clause in order to subject such rights to arbitration. *Id.* To meet the "clear and unmistakable" standard, the collective bargaining agreement must have something akin to the "specific enumeration of the statutory claims to be arbitrated." *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 52 (1st Cir. 2013) (quoting *Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 7 n. 7 (1st Cir. 2012)). This is a high bar that the CBA at issue here fails to meet.

---

[4] The Sindicato Puertorriqueño de Trabajadores (the Union) entered into a collective bargaining agreement with the Municipality of San Juan that became effective on July 1, 2015. Docket No. 9. Plaintiff does not dispute that she was represented by the Union nor that she is bound by the CBA. Docket No. 12.

The relevant part of the CBA's arbitration clause states: "the parties agree to resolve any and all complaints, controversies or claims that may arise *in relation to the interpretation and application of this Agreement* through the mechanisms provided herein." Docket No. 9-22 at 10 (emphasis added). The CBA also contains a nondiscrimination provision that states, in relevant part:

> Both the Autonomous Municipality of San Juan and the Union hereby declare that they **shall not discriminate against any employee included in the Unit for reasons of . . . sex** . . . . The Autonomous Municipality of San Juan agrees not to **discriminate against any employee who**, being part of the Appropriate Unit, decides to lodge a complaint under the Grievance and Complaint Procedure or exercise any right granted by law.

*Id.* at 5. (emphasis added)

Defendant argues that because (1) the arbitration clause covers all claims arising in "relation to the interpretation and application" of the CBA, and (2) the CBA has a provision prohibiting sex-based discrimination against employees, Plaintiff's Title VII sex-discrimination claims are covered by the arbitration clause.[5] Docket No. 9 at 6.

Defendant's argument is flawed because it equates a contractual antidiscrimination provision with Title VII of the Civil Rights Act. Title VII's prohibition of employment discrimination, a statutory right, is distinct from the CBA's antidiscrimination provision, a contractual right. *See Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 51 (1st Cir. 2013). It is irrelevant "whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 53-54 (2009) (holding employee's Title VII rights not waived by his resorting to arbitration under nondiscrimination clause of collective bargaining agreement). In other words, a statutory right is not subject to

---

[5] The CBA also prohibits retaliation and Defendant makes the same argument as to that claim. Docket No. 9. The Court's reasoning as to the sex-discrimination claim applies equally to the retaliation claim.

arbitration simply because the statutory right covers a similar subject matter as a provision in the collective bargaining agreement. *Manning*, 725 F.3d at 51. But that is exactly what Defendant tries to argue by conflating the CBA's antidiscrimination provision with Title VII. As such, Defendant's argument is unpersuasive.

Defendant correctly states that *14 Penn Plaza LLC v. Pyett* holds that constructive-bargaining agreements "clearly and unmistakably" requiring union members to arbitrate statutory claims are enforceable. 556 U.S. 247, 262, 274 (2009) (enforcing a collective-bargaining agreement that specifically subjected claims made "pursuant to Title VII" to arbitration). But the arbitration clause in *Pyett* specifically mentioned Title VII claims, something the CBA in the instant case does not do. *Id.* Moreover, the Court in *Pyett* distinguished previous Supreme Court decisions by noting that in those cases, like in the instant case, the arbitration clauses only covered contractual disputes, not statutory claims. *Id.* at 260-65, 274. One such case was *Alexander v. Gardner-Denver Co.* 415 U.S. 36 (1974).

*Gardner-Denver* centered on a collective-bargaining agreement that subjected to arbitration any "differences aris[ing] between the Company and the Union as to the meaning and application of the provisions of this Agreement" and "any trouble aris[ing] in the plant." 415 U.S. at 40-41. The Court found this language did not cover statutory rights like those provided by Title VII. *Id.* at 53-54. The language in *Gardner-Denver* is substantially similar to the language in the CBA at issue here. Docket No. 9-22 at 5. Thus, the result should be the same.

The CBA does not "clearly and unmistakabl[y]" subject statutory claims to arbitration. Accordingly, Plaintiff's Title VII claims are not subject to arbitration. Therefore, Defendant's Motion to Compel Arbitration is denied.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Judgment on the Pleadings is GRANTED in part and DENIED in part. All of Plaintiff's Title VII claims, and the Fourteenth Amendment Equal Protection claim, are preserved. The First and Fifth Amendment claims, and the Substantive Due Process claim, are dismissed with prejudice. Defendant's Motion to Compel Arbitration is DENIED.

　　IT IS SO ORDERED.

　　In San Juan, Puerto Rico, this Monday, July 10, 2017.

　　　　　　　　　　　　　　　　　　　　　　　　s/ Jay A. Garcia-Gregory
　　　　　　　　　　　　　　　　　　　　　　　　JAY A. GARCIA-GREGORY
　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge